## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JOHNATHAN NICHOLSON, | ) | CASE NO. 1:13CV2535 |
| | ) | |
| Petitioner, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| CHRISTOPHER La ROSE, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Johnathan Nicholson ("Nicholson"), challenges the constitutionality of his conviction in the case of *State v. Nicholson*, Cuyahoga County Court of Common Pleas Case No. CR-08-506069-B.  Nicholson, *pro se*, filed his Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on November 15, 2013.  On March 17, 2014, Warden Christopher La Rose ("Respondent") filed his Return of Writ.  (Doc. No. 10.)  Nicholson filed a Traverse on May 14, 2014, to which Respondent replied.  (Doc. Nos. 14, 15.)  For reasons set forth in detail below, it is recommended that Nicholson's Petition be DENIED.

### I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v. Bobby*, 654 F.3d 668, 701 (6th Cir. 2011).  The state appellate court summarized the facts

underlying Nicholson's conviction as follows:

> {¶ 2} On September 8, 2007, defendant, who is mentally ill, and his cousin Franco Stephens were walking on E. 114th St. when they came across a group of men playing dice in a driveway. Stephens asked to join the game, but the group turned him down. A fight broke out, and defendant fatally shot two of the men.

> {¶ 3} Defendant and Stephens were indicted on multiple counts including aggravated murder and aggravated robbery. On September 5, 2008, a jury found Stephens guilty of two counts of murder and one count of attempted murder under an aiding and abetting theory.

> {¶ 4} On January 22, 2009, defendant pled guilty to two counts of aggravated murder, four counts of aggravated robbery, and one count of attempted aggravated murder. The court agreed to the recommended prison sentence of "an aggregate of life to 50 years with no chance for parole."

> {¶ 5} On December 3, 2009, this court reversed Stephens's convictions on appeal for insufficient evidence. *State v. Stephens*, 8th Dist. No. 92430, 2009–Ohio–6305.  In short, this court held that "Stephens was either unconscious * * * or just dazed and getting up * * * when [defendant] opened fire. There was no testimony of any communication between [defendant] and Stephens" about the shootings. *Id.* at ¶ 16. Therefore, the court concluded, there was no evidence that Stephens aided and abetted defendant.

*State v. Nicholson*, 2012 WL 4755164 at * 1 (Ohio App. 8th Dist. Oct. 4, 2012.)

## II.  Procedural History

### A.        Conviction

In January 2008, a Cuyahoga County Grand Jury charged Nicholson with two counts of aggravated murder in violation of Ohio Revised Code ("O.R.C.") § 2903.01(A) (Counts 11 and 12); two counts of aggravated murder in violation of O.R.C. § 2903.01(B) (Counts 13 and 14); two counts of aggravated robbery in violation of O.R.C. § 2911.01(A)(1) (Counts 15 and 17); two counts of aggravated robbery in violation of O.R.C. § 2911.01(A)(3) (Counts 16, and 18); and, one count of attempted aggravated murder in violation of O.R.C. § 2923.02 & 2903.01(A)

-2-

(Count 19.)  (Doc. No. 10-1, Exh. 1)  All counts carried one and three year firearm specifications. *Id.*  In addition, the aggravated murder counts (Counts 11-14) carried two felony murder specifications and two mass murder specifications.  *Id.*

Prior to trial, Nicholson underwent a psychiatric evaluation to determine his competency to stand trial and his sanity at the time of the offenses.  The trial court conducted a hearing on October 23, 2008, at which time the parties stipulated to the submitted psychiatric reports that found Nicholson both competent and sane.  (Doc. No. 10-1, Exh. 3.)

On January 20, 2009, the trial court began conducting voir dire of potential jurors regarding "death penalty qualifications."  (Doc. No. 10-1, Exh. 4.)  Two days later, Nicholson withdrew his not guilty plea and pled guilty to two counts of aggravated murder (Counts 11, 12); four counts of aggravated robbery (Counts 15-18); and, one count of attempted aggravated murder (Count 19.)  (Doc. No. 10-1, Exh. 5.)  All specifications were deleted from these charges, and the remaining counts (Counts 13, 14) were nolled.  *Id.*

On January 22, 2009, the trial court accepted the parties' joint recommendation and sentenced Nicholson as follows: "Life to 25 years on Count 11 with no chance of parole; Life to 25 years on Count 12 with no chance of parole; Counts 11 and 12 to run consecutive to each other for a total of 50 years with no chance for parole.  As for Counts 15, 16, 17, 18, and 19, each count receives 5 years for a total of 25 years.  Counts 15, 16, 17, 18 and 19 are to run concurrent with Counts 11 and 12 for an aggregate of Life to 50 years with no chance for parole."  (Doc. No. 10-1, Exh. 5 and Exh. 46 at Tr. 65.)

**B.        Direct Appeal**

On April 28, 2009, Nicholson, through counsel, filed a Notice of Appeal with the Court of

Appeals for the Eighth Appellate District ("state appellate court").  (Doc. No. 10-1, Exh. 6.)  On

September 21, 2009, the state appellate court *sua sponte* dismissed the appeal for failure to file a

brief.  (Doc. No. 10-1, Exh. 7.)

On March 17, 2011, Nicholson filed a *pro se* Application for Reopening Pursuant to Ohio

Appellate Rule 26(B).  (Doc. No. 10-1, Exh. 8.)  Therein, he argued appellate counsel was

ineffective for failing to raise the following issues:

> I.      THE TRIAL COURT'S FAILURE TO CONVENE A THREE JUDGE
>         PANEL TO ACCEPT GUILTY PLEA TO AGGRAVATED MURDER IS
>         REVERSIBLE ERROR AND A MANIFEST MISCARRIAGE OF
>         JUSTICE.
>
> II.     THE TRIAL COURT LACKED JURISDICTION TO ACCEPT GUILTY
>         PLEA FOR AGGRAVATED MURDER AND THE JUDGMENT IS
>         VOID PURSUANT TO PRATTS V. HURLEY; STATE V. PARKER;
>         R.C. 2945.06 AND CRIM. R. 11(C)(3).

(Doc. No. 10-1, Exh. 8 at 36.)  On May 9, 2011, the state appellate court *sua sponte* converted

Nicholson's Application for Re-opening into an Application for Reconsideration under Ohio App.

Rule 26(A), and granted it.[1]  (Doc. No. 10-1, Exh. 11.)  New appellate counsel was appointed and

invited to file a motion for leave to file a delayed appeal.  *Id.*

On June 6, 2011, Nicholson, through counsel, filed a Motion for Leave to file Delayed

---

[1] The state appellate court noted as follows: "Assigned [appellate] counsel sought and
was granted three extensions of time to file Appellant's brief and assignments of error.
The Court denied her fourth motion for extension of time.  After this Court dismissed the
appeal for failure to file a brief, she did not seek reconsideration.  Likewise, prior to the
dismissal, she did not move to amend the notice of appeal or seek leave to file a delayed
appeal.  *Sua sponte*, Appellant's Application for Reopening is converted into an
Application for Reconsideration under App. R. 26(A) and is granted."  (Doc. No. 10-1,
Exh. 11.)

-4-

Appeal.  (Doc. No. 10-1, Exh. 12.)  The motion was granted on June 20, 2011.  (Doc. No. 10-1, Exh. 13.)  Two days later, on June 22, 2011, Nicholson (through counsel) filed a Motion to Voluntarily Dismiss Delayed Appeal.  (Doc. No. 10-1, Exh. 14.)  Therein, Nicholson's counsel explained that "[a]fter consulting extensively with undersigned counsel, Mr. Nicholson wishes to litigate the motion to withdraw his guilty plea that he previously filed in the trial court.  Consequently, he now moves to dismiss the instant appeal."  *Id.*  The state appellate court granted Nicholson's motion for voluntary dismissal on June 27, 2011.  (Doc. No. 10-1, Exh. 15.)

**C.      Motion to Withdraw Guilty Plea**

Meanwhile, on April 4, 2011, Nicholson had filed a *pro se* Motion to Withdraw Guilty Plea in the state trial court.  (Doc. No. 10-1, Exh. 17.)  Therein, Nicholson argued as follows:

> It is the defendant's position that his guilty plea represents a manifest miscarriage of justice.  The evidence adduced at co-defendant Stephens' trial is essentially the same evidence which would have been adduced at the trial of the defendant *sub judice* had he not plead guilty.
>
> The record at co-defendant Stephens' trial presented no evidence of an aggravated robbery or robbery, nor did it present any evidence of the element 'prior calculation and design,' an element required for a conviction of aggravated murder § 2923.01(a).  (Co-defendant Stephens was acquitted of aggravated murder with prior calculation and design § 2903.01(a) and found him guilty of murder § 2903.02; the attempted aggravated murder reduced to attempted murder).
>
> Because the record (in Stephens' trial) is utterly devoid of any evidence of a[n] aggravated robbery, attempted or otherwise, and the evidence was insufficient as to the element 'prior calculation and design' (R.C. § 2903.01(a)), the defendant's (4) four convictions for aggravated robbery, (1) one conviction for attempted aggravated murder; and two (2) aggravated murder 'with prior calculation and design' represent a manifest miscarriage of justice.

(Doc. No. 10-1, Exh. 17 at 73.)  Nicholson supported his motion with a copy of the state appellate court's decision in co-defendant Franco Stephens' case, in which the court found no evidence of a

robbery during the incident in question and, further, no evidence that Stephens and Nicholson had "any sort of plan or agreement" to shoot the two victims, Edward Walker and Justin Taylor. (Doc. No. 10-1, Exh. 17 at 78-88.)

Nicholson also submitted two affidavits in support of his motion.  In one, Nicholson avers that (1) "at no time did I ever steal or take anything from [Walker and Taylor];" (2) "neither my cousin [Stephens] or I planned the deaths of" Walker or Taylor; (3) "[t]he events that occurred on the night in question were a spontaneous eruption of events;" (4) "I felt the need to protect my cousin and myself because [Walker] was hitting my cousin so hard that he broke both his jaw and some facial bones;" (5) "[h]ad the men not posed a threat of serious bodily harm or death, I would not have shot at them;" (6) "I told my trial lawyers that I wanted to assert the affirmative defense of self-defense;" (7) "[m]y trial lawyers told me that there would be no way that they could have me acquitted of the death specification and that I would undoubtedly be sentenced to death;" and, (8) "I plead guilty to the charges because my lawyers insisted that if I did not plead guilty, 'they will kill you * * * take the deal or die * * * they will have you on death row with more chains than the ghost of Christmas."  (Doc. No. 10-1, Exh. 17 at 90-93.)  Nicholson also averred that, at the time of his guilty plea, he was taking Hadhol and Lithium and that this medication caused him to "have a hard time concentrating and/or think clearly as I would without the medication."[2]  *Id.* at 92.

The state trial court conducted a pre-trial conference, at which it granted Nicholson's

---

[2]  Nicholson also attached excerpts from the transcripts of testimony given by Anthony Burns and Tremayne Chandler during Stephens' trial.  (Doc. No. 10-1, Exh. 17.)  Burns and Chandler were playing dice with Walker and Taylor at the time of the events in question.  *See State v. Stephens*, 2009 WL 4406128 at * 1-2 (Ohio App. 8th Dist. Dec. 3, 2009).

-6-

appointed appellate counsel permission to supplement Nicholson's *pro se* motion to withdraw. (Doc. No. 10-1, Exh. 18 at 304.)  On June 20, 2011, Nicholson, through counsel, filed a Supplement to his Motion to Withdraw Guilty Plea.  (Doc. No. 10-1, Exh. 18.)  Therein, Nicholson argued that the appellate court's decision in *Stephens*, as well as Nicholson's affidavits, constituted "new evidence" that warranted an evidentiary hearing on his motion to withdraw guilty plea.[2]  *Id.*  Nicholson also emphasized his "long history of mental illness" and maintained that "[a]t the guilty plea hearing, the Court did not take additional precautions to ensure that his plea was knowing, voluntary, and intelligent in light of his mental illness or the fact that he was medicated at the time of the plea."[3]  *Id.* at 309.  The State opposed Nicholson's motion and supplement.  (Doc. No. 10-1, Exhs. 19, 20.)

On July 18, 2011, Nicholson filed a Second Supplement to his Motion to Withdraw Guilty Plea, which he supported with an affidavit from Mr. Stephens.  (Doc. No. 10-1, Exh. 21.)  In his affidavit, Stephens averred (among other things) that (1) he was drunk when he approached Walker and Taylor and asked to play dice with them; (2) he showed Walker and Taylor a wad of approximately $600 in cash; (3) Walker hit him in the face with "brass knuckles or . . . a pole or something hard;" and, (4) his jaw was broken and he was briefly knocked unconscious.  *Id.* at

---

[2]  Nicholson also argued that, because Stephens' conviction had been overturned, Stephens was "no longer constrained by his interest in asserting his Fifth Amendment right to remain silent" and, therefore, was "now free to provide a sworn statement or testimony describing the incident as he recalls it, including Mr. Nicholson's conduct." (Doc. No. 10-1, Exh. 18 at 306.)  Counsel indicated he was in the process of locating Stephens, but believed he would be available for a hearing.

[3] Nicholson also apparently submitted exhibits in support of his supplement to his motion to withdraw.  However, these exhibits are not included in the habeas record before this Court.

-7-

336.  Stephens also stated as follows:

> 15.  I believe Johnathan [Nicholson] may have saved my life that night. I think he was defending me and himself in response to a sudden attempt to assault me and take my money.  There were four of them and two of us, we were at their house, they knew I had a lot of cash on me, and they had pit bulls in the driveway.

> * * *

> 18.  Johnathan and I did not discuss robbing the guys who were shooting dice or harming them in any way.  In fact, there was no plan whatsoever– I saw the dice game and we approached because I was drunk and spontaneously decided I wanted to play.  I believe they were trying to rob me.

> * * *

> 21.  I rejected all plea offers and took my case to trial because I was innocent. I told Johnathan to take his case to trial too because I believe he acted in self-defense and in my defense.  I thought he was going to go to trial. I was surprised when I heard he plead guilty and thought it must have had something to do with his mental illness.

*Id.* at 337.  The State opposed Nicholson's Second Supplement.  (Doc. No. 10-1, Exh. 22.)

On December 27, 2011, the trial court denied Nicholson's Motion to Withdraw Guilty

Plea as follows:

> Defendant's Motion to Withdraw his Plea, filed on April 5, 2011 and supplemented on June 28, 2011, is denied.  The trial court is not required to hold a hearing on Defendant's motion.  *State v. Russ*, 2003 WL 759664 (Ohio App. 8 Dist.).  To withdraw a plea after imposing sentence, the Defendant has the burden to establish a manifest injustice.  *State v. Smith* (1977), 49 Ohio St.2d 261, 264.  The Defendant fails to do so in this matter.  The Court finds that the Defendant's basis to withdraw his plea is the subsequent reversal of his co-defendant's convictions, but the Court does not find that that decision impacts the defendant's plea and does not find co-defendant Franco Stephens' affidavit to be compelling.  The Court also notes that Defendant waited over a year after that reversal to file this motion.

(Doc. No. 10-1, Exh. 23.)

Nicholson, through counsel, timely appealed and raised the following two assignments of

-8-

error:

     I.      THE TRIAL COURT, IN VIOLATION OF APPELLANT'S RIGHTS
UNDER THE UNITED STATES AND OHIO CONSTITUTIONS,
ABUSED ITS DISCRETION WHEN IT DENIED APPELLANT'S
MOTION TO WITHDRAW HIS GUILTY PLEA.

     II.     THE TRIAL COURT, IN VIOLATION OF APPELLANT'S RIGHTS
UNDER THE UNITED STATES AND OHIO CONSTITUTIONS,
ERRED WHEN IT DENIED APPELLANT'S MOTION TO
WITHDRAW HIS GUILTY PLEAS WITHOUT HOLDING A
HEARING.

(Doc. No. 10-1, Exhs. 24, 25.)   On October 4, 2012, the state appellate court affirmed the trial

court's denial of Nicholson's motion to withdraw guilty plea without an evidentiary hearing.

(Doc. No. 10-1, Exh. 27.)  *See also State v. Nicholson*, 2012 WL 4755164 (Ohio App. 8th Dist.

Oct. 4, 2012).

     On November 19, 2012, Nicholson, through counsel, filed a timely notice of appeal to the

Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 28.)  In his memorandum in support of

jurisdiction, Nicholson raised the following sole proposition of law:

     I.      A TRIAL COURT CONSIDERING A DEFENDANT'S POST-
SENTENCING MOTION TO WITHDRAW A GUILTY PLEA THAT IS
PREMISED UPON EVIDENCE NOT AVAILABLE TO THE TRIAL
JUDGE AT THE TIME THE PLEA WAS ENTERED, SHOULD
CONDUCT AN EVIDENTIARY HEARING ON THE MOTION IF THE
MOTION SETS FORTH ALLEGATIONS THAT, IF PROVEN TO BE
TRUE, WOULD ESTABLISH THAT THE PLEA SHOULD BE
WITHDRAWN TO CORRECT A MANIFEST INJUSTICE.

(Doc. No. 10-1, Exh. 29.)  On February 20, 2013, the Court declined to accept jurisdiction.

(Doc. No. 10-1, Exh. 31.)

    **D.**    **Application to Reopen**

     On December 24, 2012, Nicholson filed a *pro se* Application for Re-opening pursuant to

-9-

Ohio App. R. 26(B), seeking to reopen the appeal from the denial of his motion to withdraw guilty plea.  (Doc. No. 10-1, Exh. 32.)  Therein, he argued appellate counsel was ineffective for failing to raise the following claim:

> I.      APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF
>         COUNSEL IN VIOLATION OF APPELLANT'S RIGHT TO
>         EFFECTIVE ASSISTANCE OF COUNSEL AS GUARANTEED BY
>         THE SIXTH AMENDMENT OF THE UNITED STATES
>         CONSTITUTION WHEN COUNSEL ADVISED APPELLANT TO
>         PLEAD GUILTY TO AGGRAVATED ROBBERY CHARGES AND
>         AGGRAVATED MURDER CHARGES, ALTHOUGH CO-
>         DEFENDANT FRANCO STEPHENS HAD ALREADY BEEN
>         ACQUITTED OF THOSE CHARGES FOR LACK OF SUFFICIENT
>         EVIDENCE, RENDERING APPELLANT'S PLEA NOT KNOWINGLY,
>         VOLUNTARILY AND/OR INTELLIGENTLY MADE.

(Doc. No. 10-1, Exh. 32.)

On April 26, 2013, the state appellate court denied Nicholson's Application as follows:

> {¶ 1} Jonathan Nicholson has filed a timely application for reopening pursuant to
> App.R. 26(B).  Nicholson is attempting to reopen the appellate judgment that was
> rendered in *State v. Nicholson*, 8th Dist. No. 97873, 2012–Ohio–4591, which
> affirmed the trial court's denial of a postconviction motion to withdraw his plea of
> guilty to four counts of aggravated murder, four counts of aggravated robbery,
> and one count of attempted aggravated robbery.  We decline to reopen
> Nicholson's appeal.
>
> {¶ 2} The appeal in *Nicholson* concerned the trial court's denial of a
> postconviction motion.  However, an application for reopening, that is filed
> pursuant to App. R. 26(B), can only be employed to reopen an appeal from the
> judgment of conviction and sentence based upon a claim of ineffective assistance
> of appellate counsel.  *State v. Loomer*, 76 Ohio St.3d 398, 1996–Ohio–59, 667
> N.E.2d 1209; *State v. Waver*, 8th Dist. No. 97000, 2011–Ohio–6480.  Since App.
> R. 26(B) applies only to the direct appeal of a criminal conviction and sentence, it
> cannot be employed to reopen an appeal that dealt with the denial of a
> postconviction motion.
>
> {¶ 3} Accordingly, the application for reopening is denied.

*State v. Nicholson*, 2013 WL 1858916 (Ohio App. 8th Dist. April 26, 2013).

-10-

On May 28, 2013, Nicholson, *pro se*, appealed to the Supreme Court of Ohio.  (Doc. No. 10-1, Exh. 36.)  In his memorandum in support of jurisdiction, Nicholson raised the same claim as he did in the state appellate court.  (Doc. No. 10-1, Exh. 37.)  On July 24, 2013, the Court declined to accept jurisdiction.  (Doc. No. 10-1, Exh. 38.)

**E.**       **Federal Habeas Petition**

On November 15, 2013, Nicholson filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

GROUND ONE:     THE TRIAL COURT IN VIOLATION OF
                PETITIONER'S RIGHT UNDER THE UNITED STATES
                AND OHIO CONSTITUTION, ERRED WHEN IT
                DENIED APPELLANT MOTION TO WITHDRAW HIS
                GUILTY PLEA.

GROUND TWO:     THE TRIAL COURT, IN VIOLATION OF APPELLANT
                RIGHT UNDER THE UNITED STATES AND OHIO
                CONSTITUTION, ERRED WHEN IT DENIED
                APPELLANT'S MOTION TO WITHDRAW HIS
                GUILTY PLEA WITHOUT HOLDING A HEARING.

GROUND THREE:   A TRIAL COURT CONSIDERING A DEFENDANT'S
                POST-SENTENCING MOTION TO WITHDRAW A
                GUILTY PLEA THAT IS PREMISED UPON EVIDENCE
                NOT AVAILABLE TO THE TRIAL JUDGE AT THE
                TIME THE PLEA WAS ENTERED, SHOULD
                CONDUCT AN EVIDENTIARY HEARING ON THE
                MOTION IF THE MOTION SETS FORTH
                ALLEGATION THAT, IF PROVEN TO BE TRUE,
                WOULD ESTABLISH THAT THE PLEA SHOULD BE
                WITHDRAWN TO CORRECT A MANIFEST
                INJUSTICE.

GROUND FOUR:    APPELLANT RECEIVED INEFFECTIVE ASSISTANCE
                OF COUNSEL IN VIOLATION OF APPELLANTS
                RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL
                AS GUARANTEED BY THE SIXTH AMENDMENT OF
                THE UNITED STATES CONSTITUTION WHEN
                COUNSEL ADVISED APPELLANT TO PLEAD

-11-

GUILTY TO AGGRAVATED ROBBERY CHARGES
AND AGGRAVATED MURDER CHARGES
ALTHOUGH CO-DEFENDANT FRANCO STEPHENS
HAD ALREADY BEEN ACQUITTED OF THOSE
CHARGES FOR LACK [OF] SUFFICIENT EVIDENCE
RENDERING APPELLANTS PLEA NOT
KNOWINGLY, VOLUNTARILY AND/OR
INTELLIGENTLY MADE.

(Doc. No. 1.)

### III.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d) (1996).   Clearly established federal law is to be determined by the holdings

of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL

2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010);

*Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.

2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal

principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly

-12-

established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id*. at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, ⸺ U.S. ⸺, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness

-13-

question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### A.  Grounds One through Three

In his first three grounds for relief, Nicholson argues his due process rights were violated when the state trial court denied his motion to withdraw his guilty plea without an evidentiary hearing.  He maintains that, at a minimum, an evidentiary hearing was warranted based on the state appellate court's decision in *Stephens* and the affidavits submitted by Stephens and Nicholson in connection with the motion.  Nicholson emphasizes this evidence was not available at the time of his guilty plea and that, "if proven, [it] would establish grounds for a withdrawal of the plea."  (Doc. No. 1 at 6.)

Respondent argues these grounds "are not cognizable in federal habeas corpus because there is no constitutional right to withdraw a guilty plea or to an evidentiary hearing on a motion to withdraw a guilty plea." (Doc. No. 10 at 12.)

Nicholson raised these claims in his appeal from the trial court's denial of his post-

-14-

conviction Motion to Withdraw Guilty Plea.  (Doc. No. 10-1, Exh. 25.)  The state appellate court

rejected them as follows:

{¶ 14} A motion to withdraw a guilty plea is governed by the standards set forth in Crim. R. 32.1, which states:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶ 15} Accordingly, a defendant who attempts to withdraw a guilty plea after sentence has been imposed bears the burden of demonstrating a manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977).  This court has stated that:

[a] manifest injustice is defined as a "clear or openly unjust act," * * * "an extraordinary and fundamental flaw in the plea proceeding." Again, "manifest injustice" comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her.

*State v. Sneed*, 8th Dist. No. 80902, 2002–Ohio–6502.

{¶ 16} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court."  *Smith*, at paragraph two of the syllabus.  Our review is limited such that we cannot reverse the trial court's denial of the motion unless we find that the ruling was an abuse of discretion.  *Id*.

{¶ 17} The trial court need not hold an evidentiary hearing on the post-sentence motion to withdraw a guilty plea if the "record indicates that the movant is not entitled to relief and the movant has failed to submit evidentiary documents sufficient to demonstrate a manifest injustice."  *State v. Russ*, 8th Dist. No. 81580, 2003–Ohio–1001 (citations omitted).

The courts have consistently held that a trial court need not hold an evidentiary hearing in a motion to withdraw a plea if the only evidence provided consists of affidavits from interested parties which conflict with the facts elicited at the plea hearing. * * * [Thus,] [t]he trial court cannot grant a motion to withdraw a plea

-15-

based upon an affidavit which directly contradict[s] the record.

*State v. Yearby*, 8th Dist. No. 79000, 2002 Ohio App. LEXIS 199, 2002 WL 120530 (Jan. 24, 2002), citing *State v. Winters*, 5th Dist. No. 97CA144, 1998 Ohio App. LEXIS 3552, 1998 WL 430517 (July 20, 1998).

{¶ 18} In the instant case, when defendant pled guilty on January 22, 2009, he was aware that Stephens's motion for acquittal had been granted on the robbery charges on September 5, 2008.  Therefore, we cannot say this was newly discovered evidence leading to a manifest miscarriage of justice.  *See State v. Kenney*, 8th Dist. Nos. 81752 and 81879, 2003–Ohio–2046, ¶ 45 (newly discovered evidence "must not be evidence which was in existence and available for use at the time of trial and which could and should have been submitted at trial if the defendant wished to use it").

{¶ 19} Turning to the aggravated and attempted aggravated murder charges, defendant relies on three affidavits to support his argument that the deaths of the two victims were not premeditated and that he acted spontaneously or in defense of Stephens on the night in question.  Ohio courts have consistently held that affidavits from interested parties such as defendants, co-defendants, and family members are self-serving and may be discounted.  *State v. Spencer*, 8th Dist. No. 92992, 2010–Ohio–1667; *State v. Brown*, 167 Ohio App.3d 239, 2006–Ohio–3266, 854 N.E.2d 583 (10th Dist.)

{¶ 20} Furthermore, Stephens's affidavit states that he was "not sure what happened immediately after [he] was knocked out," but he "heard gun shots"as he was running away.  Despite admitting that he had no firsthand knowledge of "what happened," Stephens reaches the following conclusion: "I believe [defendant] may have saved my life that night. I think he was defending me and himself in response to a sudden attempt to assault me and take my money." Stephens's affidavit does not support defendant's argument that he was acting in defense of Stephens.  Rather, the affidavit is not inconsistent with the testimony at Stephens's trial that defendant fired the first shot while Stephens was either still knocked out or dazed and getting up. Newly discovered evidence

> must meet some threshold standard of cogency; * * * [it must be more than] simply attaching as exhibits evidence which is only marginally significant and does not advance the petitioner's claim beyond mere hypothesis and a desire for further discovery.

*State v. Coleman*, 1st Dist. No. C–900811, 1993 Ohio App. LEXIS 1485, *21, 1993 WL 74756 (Mar. 17, 1993).

{¶ 21} Accordingly, we cannot say that the court abused its discretion in denying

defendant's motion to withdraw his guilty plea without conducting a hearing.
Defendant's first and second assignments of error are overruled.

*State v. Nicholson*, 2012 WL 4755164 at * 2-4 (Ohio App. 8th Dist. Oct. 4. 2012).

It is well-settled that, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). As such, the Supreme Court has explained that "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id.* at 67-68. *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001). Indeed, the Sixth Circuit has held that habeas courts "must defer to a state court's interpretation of its own rules of evidence and procedure when assessing a habeas petition." *Brooks v. Anderson*, 292 Fed. Appx. 431, 437 (6th Cir. 2008) (quoting *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)). Thus, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983). *See also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Bey*, 500 F.3d at 519; *Coleman*, 244 F.3d at 542.

Based on the above, the Court finds that, to the extent Nicholson claims he is entitled to relief because the trial court erred under Ohio law in denying his motion to withdraw guilty plea without a hearing, Nicholson raises a state law issue that is not cognizable in these federal habeas proceedings. *See, e.g., Xie v. Edwards*, 1994 WL 462143 at * 2 (6th Cir. Aug. 25, 1994) (holding that "the district court properly found that whether the trial court abused its discretion in denying Xie's motion to withdraw his plea is a question governed by Ohio's statutes and case" and, therefore, "cannot support federal habeas relief absent a showing that the alleged error rendered the proceedings fundamentally unfair"). *See also Johnson v. Warden, Lebanon Correctional*

-17-

*Institution*, 2014 WL 935222 at * 4 (S.D. Ohio March 10, 2014); *Rice v. Welch*, 2014 WL 4794585 at * 23 (N.D. Ohio Sept. 23, 2014); *Schmidt v. Coleman*, 2012 WL 5878856 at * 11 (N.D. Ohio Oct. 29, 2012); *Dickey v. Warden, Lebanon Correctional Inst*., 2010 WL 92510 at * 7 (S.D. Ohio Jan. 6, 2010).

Moreover, there is no federal constitutional right to withdraw a guilty plea.  *See e.g., Jones v. Sheldon,* 2014 WL 1493137 at * 3 (N.D. Ohio April 11, 2014); *Schmidt*, 2012 WL 5878856 at * 11; *Moorer v. Warden, Marion Corr. Facility*, 2012 WL 3579645 at * 5 (N.D. Ohio July 23, 2012); *Dickey*, 2010 WL 92510 at * 8; *Akemon v. Brunsman*, 2007 WL 2891012 at *12 (S.D.Ohio Sept. 28, 2007).  *See also United States ex rel. Scott v. Mancusi*, 429 F.2d 104, 109 (2nd Cir. 1970), *cert. denied*, 402 U.S. 909, 91 S.Ct. 1385, 28 L.Ed.2d 651 (1971).  Nor does a criminal defendant have a constitutional right to an evidentiary hearing on a motion to withdraw a guilty plea.  *See Moorer*, 2012 WL 3579645 at * 4 (citing *Hines v. Miller*, 318 F.3d 157, 162 (2nd Cir. 2003)).  Thus, the decision whether to permit a defendant to withdraw a guilty plea is committed to the state trial court's discretion, which generally is not a basis for federal habeas relief.  *See Scott*, 429 F.2d at 109–10; *Jones*, 2014 WL 1493137 at * 3.

In his Traverse, however, Nicholson argues the denial of his motion to withdraw guilty plea violated his federal constitutional rights because his plea was not knowingly, voluntarily or intelligently made "due to the coercion, threats and lack of preparation made by counsel." (Doc. No. 14 at 2.)  Specifically, he claims his plea was not knowingly made because "there is nothing in the record to establish that [he] had any knowledge of co-defendants Stephens' acquittal [of the robbery charges] at trial."  *Id*. at 14.  Nicholson maintains that, had he been aware of Stephens's acquittal,  "[t]his information would have been a determining factor on [his] decision to proceed

-18-

with trial or to plead guilty." *Id*. at 15.

In addition, Nicholson argues his plea was not voluntary because "counsel pressured him into taking the plea out of fear for the death penalty." *Id*. at 16.  He claims "the promise of counsel telling Nicholson to take the plea or die show[ed] diminished interest on behalf of counsel to defend his client, and simultaneously discourage[d] Nicholson to go to trial since his understanding is that counsel cannot prevent him from receiving the death penalty." *Id.* Nicholson also asserts that "[t]here is nothing on the record to indicate [he] was aware of a possible mitigation to spare his life at a penalty phase of trial in the event he was found guilty of the death specifications." *Id*. at 17.  Finally, he argues he was unable to enter an intelligent plea because he "has a history of mental health problems, was [a] ward of the state, [was] under heavy medications, [was] being coerced by counsel with threats of the death penalty, and [was] kept in the dark about his co-defendant's acquittals." *Id.*

To be valid, a guilty plea must be entered knowingly, voluntarily, and intelligently.  *See United States v. Dixon*, 479 F.3d 431, 434 (6th Cir.2007), *citing Brady v. United States*, 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) ("Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.")  A trial court should ensure that a "defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged." *Id., quoting United States v. Webb*, 403 F.3d 373, 378–79 (6th Cir. 2005); *United States v. Goldberg*, 862 F.2d 101, 106 (6th Cir. 1988).

As another district court within this Circuit recently explained:

"[A] plea does not qualify as intelligent unless a criminal defendant first receives 'real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process.'" *Bousley v. United States*, 523 U.S. 614, 618 (1998) (quoting *Smith v. O' Grady*, 312 U.S. 329, 334 (1941)). In *Brady*, the Supreme Court adopted the following standard for determining the voluntariness of a guilty plea:

> [A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g.bribes).

*Brady*, 397 U.S. at 755 (quoting *Shelton v. United States*, 246 F.2d 571, 572 n. 2 (5th Cir.1957) (*en banc*), *rev'd on other grounds*, 356 U.S. 26 (1958)). The voluntariness of a guilty plea must be assessed in light of all the relevant circumstances surrounding the plea. *Brady*, 397 U.S. at 749; *King [v. Button]*, 17 F.3d [151]at 153 [6[th] Cir. 1994] (and cases cited therein).

For a guilty plea to be deemed voluntarily entered with a "sufficient awareness of the relevant circumstances and likely consequences," the defendant must be correctly informed of the maximum sentence that could be imposed. *King*, 17 F.3d at 154; *Hart v. Marion Corr. Instit.*, 927 F.2d 256, 259 (6th Cir. 1991). Although the defendant must be apprised of such "direct consequences" of the plea, the court is under no constitutional obligation to inform the defendant of all the possible "collateral consequences" of the plea. *King,* 17 F.3d at 153; *see also El–Nobani v. United States*, 287 F.3d 417, 421 (6th Cir. 2002). "When a defendant subsequently brings a federal habeas petition challenging his plea, the state generally satisfies its burden by producing a transcript of the state court proceeding." *Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). As the Supreme Court noted in *Blackledge v. Allison*, 431 U.S. 63 (1977):

> [T]he representations of the defendant, his lawyer, and the prosecutor at [the guilty plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Id*. at 73–74 (internal citations omitted).

*Johnson v. Warden, Lebanon Correctional Inst*., 2014 WL 935222 at * 5 (S.D. Ohio March 10, 2014) *adopted* 2014 WL 1382147 (April 8, 2014).

Here, the record reflects that, two days into trial, the State advised the trial court that it had reached a plea bargain with Nicholson, pursuant to which Nicholson agreed to plead guilty to two counts of aggravated murder; four counts of aggravated robbery; and, one count of attempted aggravated murder.  (Doc. No. 10-1, Exh. 46 at 613-614.)  In exchange, the State agreed to delete all specifications to these charges (including the death penalty specifications) and nolle the remaining two counts.  *Id.*  The State also explained that the parties had agreed upon a recommended sentence for these charges of an aggregate term of 50 years to life.  *Id.* at 615.  After the State presented the agreement to the trial court, defense counsel Charles Webster addressed the court as follows:

> MR. WEBSTER:  Mr. Webster for the record, your Honor.  The representation made to the Court by Prosecutor Kosko concerning the parameters of the plea bargain are correct to the best of our understanding.  Your Honor, we have, of course, counseled with Mr. Nicholson for several months concerning this matter and made him fully and completely aware of any and all evidence that would be adduced against him at the trial in this matter.  In fact, trial has commenced.  He's fully aware of his rights under the Constitution of the United States and the Constitution and laws of the State of Ohio, although I know the Court will make further inquiry.
>
> **Your Honor, may you also be notified, for the record, Mr. Nicholson is subject to being regularly medicated.  He's medicated in the mornings, he's medicated in the evenings here, but it's my opinion, after having talked with him, and having– he's been examined by any number of doctors,**

-21-

> **that these medications do not in any way inhibit
> his ability to understand and articulate as to
> what's going on in the courtroom here today.**
>
> **Your Honor, if the forthcoming plea is – if the
> pleas are forthcoming, your Honor, will, in light of
> all that the prosecuting attorney spread upon the
> record, in my opinion, it will be knowingly,
> intelligently, and voluntarily made.  Thank you,
> your Honor.**

*Id.* at 615-616 (emphasis added).  Co-defense counsel, Donald Butler, then stated that "[f]or the

record, Judge, I would concur with what Mr. Webster has stated to the Court."  *Id.* at 617.

The court then engaged in the following exchange with Nicholson:

THE COURT:          Thank you.  Mr. Nicholson, have you heard everything
that's been stated in court this afternoon by the assistant
prosecuting attorney and your lawyers?

THE DEFENDANT:  Yes.

THE COURT:          And do you understand everything that's been stated in
regard to what you will be pleading to, what the degree of
the felonies are associated with each charge, what's going
to be deleted from those charges, and what the agreed
sentence is, have you heard all of that?

THE DEFENDANT:  Yes.

THE COURT:          And do you understand all of that?

THE DEFENDANT:  I didn't understand from the cases that were thrown out
something that he had said but I can't recall what was
said, but I am going to furthermore agree that I did
understand the rest, and one more thing, I don't know if
the two life sentences of 25 years was eligible for parole
in 50 years, I was wondering if 50 years I'll be eligible
for parole?

THE COURT:          Yes.

THE DEFENDANT:  I do understand.

THE COURT:        So you understand everything because you just said you didn't understand.

THE DEFENDANT:  There was one thing he said about cases that was thrown out.

MR. BUTLER:       The charges that were nolled.

THE COURT:        Yes, those are counts–

MR. BUTLER:       Thirteen and 14.

THE COURT:        Yes.  Those cases which were nolled or thrown out or dismissed are, it's an aggravated murder charge in Count 13, and in Count 14 it's also an aggravated murder charge.  So those counts are thrown out.  Do you understand that now? Go ahead.

(Discussion off the record.)

MR. WEBSTER:    Okay.

THE COURT:        Now do you understand?

THE DEFENDANT:  Yes.

*Id*. at 617-619.  The court asked Nicholson to state his age (26 years old) and education level ("between 11 and 12th grade").  *Id*. at 619.  Mr. Nicholson then confirmed he was not under the influence of alcohol, but stated he was taking "some medication."  *Id*. at 620.  When the court asked "but do you understand what is going on right now this afternoon," Nicholson replied "yes." *Id.*

The court proceeded to explain the constitutional rights that Nicholson would be giving up by pleading guilty, including the right to go to trial; confront witness against him; present a defense; issue subpoenas; and, compel witnesses to testify on his behalf.  *Id*. at 620-621.  The court also explained to Nicholson that he "could testify and tell your own side of the story, or

-23-

you could choose not to testify and the prosecutor could not comment upon that fact in violation of your Fifth Amendment rights." *Id*. at 621.  Nicholson responded that he understood.  *Id.*  The court then explained that, if Nicholson went to trial, the burden of proof would be on the State and the State "must prove beyond a reasonable doubt each and every element of the crimes charged against you by proof beyond a reasonable doubt unanimous to a jury of twelve or a judge if you waived a jury." *Id*.  Nicholson again responded that he understood.  *Id.*

        Finally, the court asked the following:

| | |
|---|---|
| THE COURT: | Has anyone threatened you or coerced you to make these pleas? |
| THE DEFENDANT: | No. |
| THE COURT: | Do you understand that if you plead guilty, you're waiving the trial rights, your Constitutional rights that I just explained to you, and you are admitting the truth of the charges to which you are pleading, do you understand that? |
| THE DEFENDANT: | Yes, I do. |

*Id.* at 621-622.  The court outlined to Nicholson the terms of the agreed sentence, and confirmed that he understood.  *Id*. at 622-625.  The court then received Nicholson's guilty plea as to each of the seven charges to which he pled guilty, stating in conclusion that "[w]ith that, this Court makes a factual finding that you knowingly, intelligently, and voluntarily have made these pleas and will accept them." *Id.* at 626.  Mr. Nicholson then gave a lengthy statement, in which he expressed remorse for his actions and asked for forgiveness from the victims' families.  *Id.* at 631-634.  The trial court sentenced Nicholson, in accordance with the parties' joint recommendation, to an aggregate prison term of 50 years to life.  *Id.* at 635.

        The Court finds the denial of Nicholson's motion to withdraw guilty plea was not an

unreasonable application of clearly established federal law or based on an unreasonable

determination of the facts in light of the evidence presented.[4]  The trial court engaged in a

lengthy colloquy with Nicholson before accepting his plea.  The court confirmed that Nicholson

understood the terms of his plea and, indeed, answered Nicholson's specific questions regarding

the charges to be nolled and his parole eligibility.  The court explained to Nicholson the

constitutional rights he would be relinquishing and confirmed that he understood those rights.

The court also clearly explained the terms of the parties' recommended sentence and confirmed

Nicholson understood.  Accordingly, and upon careful review of the transcript, the Court finds it

was not unreasonable for the state courts to determine that Nicholson was well-aware of the

terms, conditions, and consequences of his plea.

        The state trial court also expressly confirmed that Nicholson, despite being medicated,

was able to understand "what is going on right now this afternoon."  (Doc. No. 10-1, Exh. 46 at

620.)  Nicholson affirmatively stated he understood, and gave no indication that he was having

---

[4]  On appeal to the state appellate court, Nicholson argued that the trial court violated his
federal constitutional rights in denying his motion because his plea was not knowingly,
intelligently, and voluntarily made.  Although the state appellate court did not expressly
analyze this issue as a federal constitutional claim, this Court nevertheless applies
AEDPA deference to the appellate court decision. In *Johnson v. Williams*, 133 S.Ct.
1088, 1096 (Feb. 20, 2013), the Supreme Court explained that "[w]hen a state court
rejects a federal claim without expressly addressing that claim, a federal habeas court
must presume that the federal claim was adjudicated on the merits" and, therefore, apply
AEDPA deference under § 2254(d). *See also Moreland v. Bradshaw*, 699 F.3d 908, 922
(6th Cir. 2012)(in pre-*Johnson* decision, noting that AEDPA deference appears to be
required "where a federal issue has been raised but the state court denied the claim with a
discussion solely of state law"). While this presumption is rebuttable "in some limited
circumstances," *Johnson*, 133 S.Ct. at 1096, the Court does not find such circumstances
present here. Indeed, Nicholson does not argue that this Court should conduct a *de novo*
review of this claim. Moreover, even if the Court were to consider this claim *de novo*, it
would lack merit for the reasons set forth above.

-25-

difficulty concentrating or that his medication otherwise impacted his ability to comprehend the proceedings.  Nicholson's defense counsel also represented that Nicholson's "medications do not in any way inhibit his ability to understand and articulate as to what's going on in the courtroom here today."  *Id*. at 615-616.  Moreover, the Court notes Nicholson gave a lengthy and articulate statement at the conclusion of the proceedings in which he expressed remorse for his actions and hope that someday he would be able to make amends with the victims' families.  *Id*. at 631-634.  Based on the above, the Court finds Nicholson's argument that his plea was not knowing, voluntary or intelligent due to his mental illness to be without merit.

Moreover, the Court rejects Nicholson's argument that his plea was not knowing, intelligent or voluntary because counsel allegedly failed to inform him of Stephens' acquittals at trial.  As an initial matter, the only evidence of this allegation is Nicholson's own affidavit.  Nicholson cites no clearly established federal law suggesting the state appellate court's decision to discount Nicholson's self-serving affidavit is contrary to clearly established federal law.  Moreover, the Court rejects Nicholson's premise that Stephens' acquittals necessarily implied that Nicholson would also have been acquitted of aggravated robbery and/or aggravated robbery.  Although Nicholson's and Stephens' cases stemmed from the same incident, the factual circumstances surrounding their respective roles in that incident are strikingly different.  Most significantly, Stephens was, by all accounts, punched in the face and left dazed, confused, and possibly briefly unconscious during most of the events in question.  Nicholson, on the other hand, responded to the attack on Stephens by momentarily leaving the scene, retrieving a gun,

then returning to the scene and shooting two individuals.[5]  *See State v. Stephens*, 2009 WL 4406128 at * 1-2 (Ohio App. 8th Dist. Dec. 3, 2009).  Thus, Nicholson's argument that knowledge of Stephens' acquittals would have necessarily induced him to proceed to trial (and potentially face the death penalty) is not persuasive.

Finally, the Court rejects Nicholson's argument that his plea was not voluntary because his counsel "coerced" him into pleading guilty.  The trial court expressly asked Nicholson whether anyone had threatened or coerced him into changing his plea.  (Doc. No. 10-1, Exh. 46 at 621-622.)  Nicholson responded "no."  *Id.*  Moreover, although no direct inquiry was made by the court, there is nothing in the plea transcript to suggest Nicholson was unhappy or dissatisfied with counsel.  Thus, the Court finds it was not unreasonable for the state courts to reject Nicholson's assertion that his plea was not voluntary because his counsel threatened and/or coerced him.

Accordingly, and for all the reasons set forth above, it is recommended that Nicholson's first, second, and third grounds for relief be denied.

**B.      Ground Four**

In his Fourth Ground for Relief, Nicholson argues he was denied effective assistance when defense counsel advised him to plead guilty to aggravated murder and aggravated robbery charges, despite the fact that Franco Stephens had already been acquitted of those charges for lack of sufficient evidence.  (Doc. No. 1 at 7.)  Specifically, as "Supporting Facts" for this Ground, the Petition states as follows:

---

[5] The full transcript of Stephens' trial was not made part of the habeas record in this case. The facts as noted above are taken from the state appellate court's decision in *State v. Stephens*, 2009 WL 4406128 at * 1-2 (Ohio App. 8th Dist. Dec. 3, 2009).

- "Trial counsel advised Mr. Nicholson to plead guilty to two (2) counts of aggravated murder 'with prior calculation and design,' although Nicholson and co-defendant Stephens did not know the victims prior to the night in question."

- "Co-defendant Stephens was acquitted of the 'prior calculation and design' element at trial prior to Mr. Nicholson pleading guilty to the two (2) counts of aggravated murder 'with prior calculation and design.'"

- "Trial counsel advised Mr. Nicholson to plead guilty to four (4) counts of aggravated robbery, although the discovery does not depict any indication whatsoever of any theft offense occurring on the night in question."

- "Co-defendant Stephens was acquitted on all counts of aggravated robbery (and all gun specifications involving robbery) at trial due to insufficient evidence prior to Mr. Nicholson pleading guilty to the four (4) counts of aggravated robbery."

- "The Eighth District Court of Appeals affirmed the trial court's decision to grant the motion for acquittal explaining there was no evidence of a robbery or theft; attempted or otherwise."

- "Counsel's advice to plead guilty to robberies that did not occur, with knowledge of the co-defendant's acquittal, is ineffective assistance."

- "Likewise, counsel's advice to plead guilty to 'aggravated' murder' with 'prior calculation and design' although the victims were strangers, and knowledge of co-defendant Stephens acquittal, is ineffective assistance."

(Doc. No. 1 at 7.)

In addition, in his Traverse, Nicholson argues counsel was deficient for failing to (1) inform him of Stephens' acquittal; (2) inform him of a possible mitigation in penalty phase of the trial; (3) assert self-defense and/or self-defense of another; (4) develop a defense strategy through communication with Nicholson; (5) offer a defense strategy; and, (6) inform Nicholson that a three-judge panel would not be accepting the guilty plea and analyzing the evidence in order to determine if Nicholson was guilty of lesser included charges.  (Doc. No. 14 at 20-21.)  Nicholson also argues ineffectiveness based on counsel's alleged "coercion and threats of the death penalty."

-28-

*Id*. at 21-22.  Nicholson maintains he was prejudiced by counsel's deficient performance because he "would have insisted on proceeding with trial had he not been coerced, had he been informed of the acquittals, and had counsel(s) properly prepared for trial with defense tactics; i.e.: self-defense and/or self-defense of another."  (Doc. No. 14 at 22.)

Respondent argues this claim is procedurally defaulted.  He maintains Nicholson did not raise this claim on direct review and then further abandoned it by failing to raise it on appeal following the trial court's denial of his motion to withdraw guilty plea.  (Doc. No. 10 at 19.) Respondent also argues that, while Nicholson did raise this claim in his 26(B) Application, the state appellate court found a 26(B) Application cannot be employed to reopen an appeal from the denial of a post-conviction motion.  Thus, Respondent asserts this claim is procedurally defaulted and, further, that Nicholson has failed to establish cause and prejudice to excuse the default.

Nicholson maintains he has established cause and prejudice to excuse the default.  He further argues he is actually innocent of the charges to which he pled guilty.  (Doc. No. 14 at 23-25.)

Although the parties devote substantial effort to arguing the issue of procedural default, the Court finds it unnecessary to address this issue.  As the United States Supreme Court has observed, federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *See Hudson v. Jones*, 351 F.3d 212, 215–16 (6th Cir. 2003); *accord Swanigan v. Sherry*, 502 Fed. App'x 544,

546 (6th Cir. 2012). Accordingly, the Court will reach the merits of this claim.[6]

Where a guilty plea is entered upon the advice of counsel, "the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)). "[T]he Supreme Court has held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel." *Carley v. Hudson*, 563 F.Supp.2d 760, 771 (N.D. Ohio 2008) (citing *Hill v. Lockhart*, 474 U.S. at 58). Under *Strickland*, a petitioner must demonstrate the following: (1) "counsel's representation fell below an objective standard of reasonableness;" and, (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To satisfy the second prong in the guilty plea context, a petitioner "must show that there is a reasonable probability that but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v.*

---

[6] Although Nicholson did not raise ineffective assistance of trial counsel as a separate and distinct assignment of error in his appeal from the denial of his motion to withdraw guilty plea, he did generally argue in his state appellate brief that he was denied his Sixth Amendment right to effective assistance of counsel by counsel's failure to advise him of Stephens' acquittals. He also argued counsel "coerced" him into pleading guilty in order to avoid the death penalty. (Doc. No. 10-1, Exh. 25 at 378.) Because the issue was raised as a federal constitutional claim, AEDPA deference applies to the state appellate court's decision despite the fact that it does not expressly address Nicholson's ineffective assistance claim. *See Johnson*, 133 S.Ct. at 1096 (holding that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits" and, therefore, apply AEDPA deference under § 2254(d)). Nicholson does not argue that this presumption does not apply with respect to this claim. Moreover, even if the Court were to consider this claim *de novo*, it would lack merit for the reasons set forth *infra*.

-30-

*Lockhart*, 474 U.S. at 58–59.  *See also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013).

"Surmounting *Strickland* 's high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 1485, 176 L.Ed.2d 284 (2010).  Indeed, the Supreme Court has repeatedly emphasized the high degree of deference afforded state court adjudications of *Strickland* claims:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires 'a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error ... beyond any possibility for fairminded disagreement.' *Harrington v. Richter*, 562 U.S. ——, ——, 131 S.Ct. 770, 786–787, 178 L.Ed.2d 624 (2011). 'If this standard is difficult to meet'—and it is—'that is because it was meant to be.' *Id.* at ——, 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the 'extreme malfunctio[n]' for which federal habeas relief is the remedy.' *Id.* at ——, 131 S.Ct., at 786 (internal quotation remarks omitted).

*Burt v. Titlow*, —— U.S. ——, —— – ——, 134 S.Ct. 10, 15–16, 187 L.Ed.2d 348 (2013).  Thus, "[w]hen a state prisoner asks a federal court to set aside a sentence due to ineffective assistance of counsel during plea bargaining, our cases require that the federal court use a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Id.* at 13 (quoting *Cullen v. Pinholster*, 563 U.S. ——, ——, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011)).  *See also Hodges*, 727 F.3d at 534 (" 'The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.'") (quoting *Richter*, 131 S.Ct. at 788).

The Court finds Nicholson has failed to establish that trial counsel's representation fell below an objective standard of reasonableness.  As set forth at length above, the trial court engaged in a lengthy plea colloquy with Nicholson, confirming that Nicholson understood the terms, conditions, and consequences of his guilty plea.  The trial court also expressly asked

Nicholson whether he had been coerced or threatened in regard to his plea, and Nicholson responded "no." Indeed, Nicholson did not express any concerns or dissatisfaction with his representation at any point during the change of plea proceedings. The only evidence that Nicholson was "coerced" or that counsel failed to apprise him of Stephens' acquittal and refused to pursue a self-defense theory, is Nicholson's own self-serving affidavit. The Court finds Nicholson's affidavit, standing alone, is insufficient to establish that defense counsel's representation was deficient.

Moreover, the Court finds it was not objectively unreasonable for defense counsel to recommend that Nicholson plead guilty despite the fact that Stephens was acquitted at trial of aggravated robbery and aggravated murder. As noted *supra*, Nicholson's and Stephens' roles in the shooting incident underlying their indictments were very different. Most significantly, it is undisputed that Stephens was punched in the face and left dazed, confused, and possibly briefly unconscious during most of the events in question. Nicholson, on the other hand, left the scene, retrieved a gun, returned to the scene, and then shot and killed two individuals. *See State v. Stephens*, 2009 WL 4406128 at * 1-2 (Ohio App. 8th Dist. Dec. 3, 2009). In light of this disparity, the Court cannot say that defense counsel was deficient in advising Nicholson to plead guilty and, thereby, avoid a possible death sentence.[7]

Accordingly, and for all the reasons set forth above, it is recommended that Nicholson's

---

[7]  Because the Court finds counsel's performance was not deficient under the first prong of *Strickland*, it need not address the second prong; i.e, whether, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at 687–88, 694. *See Rayner v. Mills*, 685 F.3d 631, 638 fn 4 (6th Cir. 2012) ("Of course, a habeas court may decline to reach the second prong if it finds that the petitioner cannot succeed on the first prong"); *Washington v. McQuiggin*, 529 Fed. Appx. 766, 772 (6th Cir. 2013).

fourth ground for relief be denied.

### C.  Motions for Leave to Supplement the Habeas Record (Doc. Nos. 16, 18)

Finally, for the following reasons, the Court denies Nicholson's Motions for Leave to Supplement the Habeas Record.  (Doc. Nos. 16, 18).  On August 18, 2014, Nicholson filed a motion asking the Court to supplement the record with his "mental health evaluation prepared/conducted by the State of Ohio appointed Psychologists."  (Doc. No. 16.)  Nicholson maintains this evaluation should be made part of the record because it is relevant both to whether his guilty plea was knowing, voluntary and intelligent, and to his claim of ineffective assistance of counsel.  *Id.* at 1-2.

On September 2, 2014, Respondent opposed Nicholson's motion, arguing the competency and sanity evaluations conducted by both the court psychiatric clinic and an independent psychologist are not relevant to the instant case.  (Doc. No. 17 at 2.)  Specifically, Respondent argues that "[n]one of Nicholson's grounds for relief challenge the trial court's rulings as to Nicholson's competency or sanity, nor could they because any errors in the competency or sanity proceedings were waived by virtue of Nicholson's January 22, 2009 plea."  *Id.*

On September 22, 2014, Nicholson replied, arguing that "there are sufficient indicia of incompetency to warrant the expansion of the record, and a hearing on the issue of incompetency relating to the guilty plea."  (Doc. No. 19.)  He appears to argue that defense counsel was ineffective for stipulating to the findings of the State-appointed psychologist that he was competent to stand trial.  *Id*. at 4.  Nicholson further maintains that the prosecution refused to provide him with a copy of his mental health evaluation, and goes on to accuse the State of "intentionally suppressing this evidence."  *Id.* at 7.  Finally, Nicholson asserts the trial court failed

to either obtain a copy of his mental health evaluation prior to accepting his guilty plea or place a copy of this evaluation in the state court record.  *Id.* at 7-8.  He maintains that "[by] not placing the mental health evaluation on the record, the trial court adjudicated the petitioner as competent without evaluation of any pertinent facts or relevant reports regarding petitioner's mental state." *Id.* at 8.

On the same date, Nicholson filed a "Motion for An Order Directing the Warden Respondent to Produce a Copy of the Mental Health Evaluation Record for Inspection." (Doc. No. 18.)  Therein, Nicholson re-states the arguments set forth in his Motion to Supplement the Habeas Record and reply in support thereof.  *Id.*

The Rules Governing Section 2254 Cases give a respondent discretion to attach to his answer parts of the record that he considers relevant.  *See* Rule 5(c) of the Rules Governing Section 2254 Cases.  Pursuant to Rule 5, a district court "may order that the respondent furnish other parts of the existing transcripts or that parts of untranscribed recordings be transcribed or furnished." *Id.*  Interpreting this Rule, the Sixth Circuit has recognized that expansion of the record in habeas cases "is not mandatory . . . and is left to the discretion of the trial judge." *Ford v. Seabold*, 841 F.2d 677, 691 (6th Cir. 1988).  *See also Beuke v. Houk*, 537 F.3d 618, 653 (6th Cir. 2008).

As Respondent correctly notes, Nicholson does not raise a habeas claim in his Petition challenging the state trial court's competency and/or sanity determinations.  Nor has Nicholson raised habeas claims regarding the State's allegedly intentional withholding of his mental health evaluation, or the state trial court's alleged failure to make that evaluation part of the state court record.  Thus, while Nicholson's mental health evaluation might have been relevant to those

claims had they been properly raised, the fact remains that Nicholson did not raise such claims in his habeas petition and they are, therefore, not before the Court for consideration.

The Court also rejects Nicholson's argument that his mental health evaluations are necessary to resolve his claim that his guilty plea was not knowing, voluntary or intelligent.  As set forth *supra*, the trial court engaged in a lengthy plea colloquy with Nicholson before accepting his guilty plea.  During this colloquy, Nicholson expressly stated that, although he was taking medication for his mental health condition, he was able to understand the change of plea proceedings.  Moreover, at no point in time during those proceedings did Nicholson indicate that his mental condition otherwise interfered with his ability to understand the nature of those proceedings.

Thus, and upon careful review, the Court determines the issues presented can be resolved from the record provided by the Respondent.  Moreover, the Court expressly finds that a hearing is not necessary on the issue of whether Nicholson's guilty plea was knowing, intelligent and voluntary.  An evidentiary hearing is, therefore, not required and Nicholson's request for the same is denied.


## V.  Conclusion

For the foregoing reasons, it is recommended that Nicholson's Petition be DENIED.


/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: January 8, 2015

-35-

## <u>OBJECTIONS</u>

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).